# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ) | **Case No.: CV 19-08861-CJC (JCx)** |
| ) | |
| **BETTER HOUSING FOR LONG** ) | |
| **BEACH and JOANI WEIR,** ) | |
| ) | |
| ) | **ORDER GRANTING GOVERNOR** |
| **Plaintiffs,** ) | **NEWSOM'S MOTION TO DISMISS** |
| ) | **[Dkt. 12]** |
| **v.** ) | |
| ) | |
| **GAVIN NEWSOM, in his official** ) | |
| **capacity as Governor of the State of** ) | |
| **California,** ) | |
| ) | |
| **Defendant.** ) | |

## I. INTRODUCTION

Plaintiffs Better Housing for Long Beach and Joani Weir bring this action for declaratory and injunctive relief against Defendant Gavin Newsom in his official capacity as Governor of the State of California. (Dkt. 1 [Complaint, hereinafter "Compl."].) Plaintiffs contend that Assembly Bill 1482 ("AB 1482"), signed into law by the Governor

in October 2019, violates the United States and California Constitutions.[1]  Specifically, they challenge AB 1482's relocation assistance provision, which demands that landlords pay or waive one month's rent before terminating certain residential tenancies.  *See* Cal. Civ. Code § 1946.2(d)(1).  Before the Court is the Governor's motion to dismiss for failure to state a claim.  (Dkt. 12 [Motion]; Dkt. 12-1 [Memorandum in Support, hereinafter "Mot."].)  For the following reasons, the Governor's motion is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

## II.  BACKGROUND

In September 2019, the California State Senate and Assembly passed AB 1482 or "the Tenant Protection Act of 2019."  Cal. Assem. Bill No. 1482 (2019–2020 Reg. Sess.).  The Governor signed the bill into law on October 8, 2019, and it became effective on January 1, 2020.  *Id.*; (Compl. ¶ 21).  AB 1482 has three primary provisions, only one of which is challenged in the instant lawsuit.

First, AB 1482 implements statewide rent control or "rent-gouging" protections.  Cal. Civ. Code § 1947.12(k)(1).  For qualifying residential properties, this provision caps annual rent increases at five percent plus inflation or ten percent, whichever is lower.  *Id.* § 1947.12(a).

Second, the bill prohibits residential landlords from terminating a tenancy without "just cause" if the tenant has lawfully and continuously occupied the property for more than twelve months.  *Id.* § 1946.2(a).  "Just cause" includes both "at-fault just cause" and "no-fault just cause."  *Id.* § 1946.2(b).  A landlord may terminate a tenancy for "at-fault

---

[1] In addition to their claims against the Governor, Plaintiffs also asserted claims against the City of Long Beach, challenging the City's Tenant Relocation Assistance Ordinance.  (*See* Compl.)  However, the parties stipulated to voluntarily dismiss Long Beach, (Dkt. 23), and the Court dismissed Plaintiffs' claims against Long Beach with prejudice pursuant to Federal Rule of Civil Procedure 41(a), (Dkt. 25).

just cause" if a tenant fails to pay rent, breaches a material term of the lease, or commits another enumerated act. *Id.* § 1946.2(b)(1).  A landlord may terminate a tenancy for "no-fault just case" to occupy the property personally, to provide it to an immediate family member, to withdraw it from the rental market, to demolish or substantially remodel it, or if required by law. *Id.* § 1946.2(b)(2).

Third, and most relevant here, AB 1482 requires property owners to provide "relocation assistance" when they terminate a tenancy for "no-fault just cause." *Id.* § 1946.2(d)(1).  Specifically, if a tenant has lived at the property for more than twelve months and the owner terminates his or her tenancy for "no-fault just cause," the owner must either "provide a direct payment to the tenant" of one month's rent or waive the tenant's final month of rent. *Id.*  The owner's failure to provide this relocation assistance renders any notice of termination void. *Id.* § 1946.2(d)(4).  Both the just cause provision and the relocation assistance provision apply to all residential properties except those specifically exempted by statute. *See id.* §§ 1946.2(a), (d).  These exemptions include hotels, motels, and other transient occupancy properties; hospitals; religious institutions; residential care facilities; dormitories; single-family owner-occupied residencies with fewer than three units; and government-regulated affordable housing. *Id.* § 1946.2(e).  The just cause and relocation assistance provisions also do not apply to properties subject to preexisting or more protective local ordinances. *Id.* § 1946.2(g).

Plaintiffs filed the instant action on October 15, 2019, one week after the Governor signed AB 1482 into law.  In their complaint, they only challenge AB 1482's relocation assistance provision, and do not challenge the rent-gouging or just cause termination provisions.  (*See* Compl. ¶¶ 56–76.)  Plaintiff Better Housing for Long Beach ("Better Housing") is a nonprofit membership organization that represents the interests of rental-housing owners in the City of Long Beach.  (Compl. ¶ 8.)  Plaintiff Joani Weir is the founder and president of Better Housing and owns several rental-housing properties in

Long Beach.  (*Id.* ¶ 9.)  Plaintiffs allege that AB 1482's relocation assistance provision has negatively affected Better Housing's members, including Weir.  Specifically, it has allegedly impacted their "ability to plan for the management and disposition of their units, because they must now consider the financial penalty (i.e., relocation payment) that they must pay for the right to repossess those units."  (*Id.* ¶¶ 8–9.)  Plaintiffs also allege that Weir "has been forced to incur significant costs to change her rental-business model, including by converting one of her rental units . . . into a furnished, extended-stay apartment."  (*Id.* ¶ 9.)

In their Complaint, Plaintiffs argue that the relocation assistance provision is facially unconstitutional under the U.S. and California Constitutions.  Plaintiffs seek declaratory relief and an order permanently enjoining the Governor from enforcing the provision.  In the instant motion, the Governor argues that all of their claims fail as a matter of law.

## III.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370,

1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994*), overruled in part on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)).

## IV.  DISCUSSION

Plaintiffs assert four causes of action against the Governor, alleging that the relocation assistance provision is facially unconstitutional under (1) the Takings Clause of the Fifth Amendment to the U.S. Constitution, (2) the Takings Clause of the California Constitution, (3) the Fourth Amendment to the U.S. Constitution, and (4) the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.  The Governor moves to dismiss all four causes of action for failure to state a claim.  The parties' briefing focuses on Plaintiffs' first claim.  The Court first examines relevant legal background on the Takings Clause and then addresses each of Plaintiffs' claims in turn.

### A.    Legal Background: Protections Against Takings and Exactions in the U.S. Constitution

The Takings Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall private property be taken for public use, without just compensation."  The Clause is made applicable to the States through the Fourteenth

Amendment.  *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897).  It imposes two limits on the government's authority to appropriate private property: "the taking must be for a 'public use' and 'just compensation' must be paid to the owner."  *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 231–32 (2003).  Of course, these limits only apply when the government effects a "taking" of private property.

1.      Possessory Takings and Regulatory Takings

The Supreme Court generally recognizes two types of takings: "possessory takings"—sometimes referred to as physical, categorical, or *per se* takings—and "regulatory takings."  *See Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 320–25 (2002) (discussing this distinction); *Yee v. City of Escondido*, 503 U.S. 519, 528–38 (1992) (same).  The "classic taking" is one "in which the government directly appropriates private property for its own use," for example, "when the government appropriates part of a rooftop in order to provide cable TV access for apartment tenants, or when its planes use private airspace to approach a government airport."  *Tahoe-Sierra*, 535 U.S. at 322–24 (citations omitted).  "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner."  *Id.* at 322.  Constitutional protections against *per se* takings also apply to the physical appropriation of personal property. *See Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2426–27 (2015) ("The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home.").

By contrast, a regulatory taking occurs when a government regulation on the use of property "goes too far."  *Penn. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922).  In general, a regulatory taking must be "functionally equivalent" to a possessory taking.  *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005).  To make this assessment, courts

consider the three *Penn Central* factors: "[1] the regulation's economic impact on the claimant, [2] the extent to which the regulation interferes with distinct investment-backed expectations, and [3] the character of the government action."  *MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013).  "Judicial decisions considering regulatory takings claims are typically 'characterized by essentially ad hoc, factual inquiries, designed to allow careful examination and weighing of all the relevant circumstances.'"  *Colony Cove Props., LLC v. City of Carson*, 888 F.3d 445, 450 (9th Cir. 2018), *cert. denied* 139 S. Ct. 917 (2019) (quoting *Tahoe-Sierra*, 535 U.S. at 322).  Applying these factors, the Supreme Court and the Ninth Circuit have consistently held that rent control provisions and other restrictions on landlord-tenant relationships are not regulatory takings.  *See id.*; *MHC Fin. Ltd.*, 714 F.3d 1118; *Yee*, 503 U.S. 519; *Pennell v. City of San Jose*, 485 U.S. 1 (1988); *Block v. Hirsh*, 256 U.S. 135 (1921).

## 2.    The *Nollan/Dolan* Test for Conditional Land-Use Permits

The Takings Clause also limits the government's authority to appropriate private property through land-use permitting.  Government entities often demand public easements in exchange for permits to develop private property—for example, conservation easements or easements for a public bike path.  In *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), the Supreme Court addressed this practice and held that this type of conditional land-use permit violates the Takings Clause unless certain standards are met.

First, the government must show an "essential nexus" between the requested concession and the applicable prohibition on development.  *Nollan*, 483 U.S. at 837.  Specifically, the government's reason for seeking a possessory interest in the applicant's property must match its reason for limiting or restricting development.  *Id.*  "[U]nless the permit condition serves the same governmental purpose as the development ban, the []

restriction is not a valid regulation of land use but an out-and-out plan of extortion." *Id.* (quotations omitted).  In *Nollan*, the Court held that an easement allowing the public to walk across private property to access a public beach was not sufficiently related to a development restriction that protected "visual access" to the beach.  *Id.* at 838–40.

Second, the government must show a "rough proportionality" between the impact of the proposed development and the conditional easement or relinquishment.  *Dolan*, 512 U.S. at 391.  The Supreme Court has clarified that this test is more demanding than the "rational basis" scrutiny imposed under the Equal Protection Clause of the Fourteenth Amendment.  *Id.*  "No precise mathematical calculation is required, but the [government entity] must make some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development."  *Id.*; *see also id.* at 395–96 (finding that the city impermissibly failed to make any effort to quantify the relationship between the demanded easement for a pedestrian/bicycle pathway and the traffic demand generated by the proposed development).

3.    *Koontz*, Unconstitutional Conditions, and Monetary Exactions

In the wake of *Nollan* and *Dolan*, courts splintered on whether the "essential nexus" and "rough proportionality" test applied to land-use permits conditioned on spending or paying money, as opposed to exactions of possessory interests in real property.  *See Town of Flower Mound v. Stafford Estates Ltd. P'ship*, 135 S.W.3d 620, 636 (Tex. 2004) (discussing this split and collecting cases).  In *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013), the Supreme Court took up this issue.

Mr. Koontz sought to dredge and fill approximately four acres of his wetlands property to build a commercial development.  *Koontz*, 570 U.S. at 600–01.  Under Florida law, he needed to obtain two permits from the St. Johns River Water

Management District for this project.  *Id.*  The District had authority to impose conditions on these permits to protect water resources and wetlands.  *Id.*  Consistent with this authority, the District generally required applicants seeking to build on wetlands to offset the resulting environmental damage by creating, enhancing, or preserving wetlands elsewhere.  *Id.*  In his application, Mr. Koontz proposed placing a conservation easement on the remaining eleven acres of his property.  *Id.*  The District rejected this proposal as inadequate and presented two counteroffers.  *Id.*  First, Mr. Koontz could reduce the size of his development to one acre and place a conservation easement on the remaining 13.9 acres.  *Id.*  Alternatively, he could supplement his initial proposal by paying for improvements to District-owned land several miles away.  *Id.* at 601–02.  After Mr. Koontz rejected these counteroffers, the District denied his application, and Mr. Koontz filed suit.  *Id.* at 602.

A Florida trial court found the District's action unlawful under *Nollan* and *Dolan*. *Id.* at 603.  The Florida Supreme Court reversed on two grounds.  First, it noted that— unlike in *Nollan* and *Dolan*—the District never actually issued the conditional permit and therefore "nothing was ever taken from Mr. Koontz."  *St. Johns River Water Mgmt. Dist. v. Koontz*, 77 So. 3d 1220, 1231 (Fla. 2011), rev'd, 570 U.S. 595 (2013).  Second, it held that a demand for money—as opposed to a demand for real property—does not give rise to a claim under *Nollan* and *Dolan*.  *Id.*

In a five-four decision, the United States Supreme Court reversed the Florida Supreme Court on both issues.  First, the majority held that the *Nollan/Dolan* standards apply when a permit applicant rejects a government "demand" for an exaction, as well as when the applicant accepts a permit conditioned on an exaction.  *Koontz*, 570 U.S. at 606–09.[2]  The Court grounded this holding in the "unconstitutional conditions doctrine,"

---

[2] The Court noted that in these situations the normal remedy under the Takings Clause—just compensation—is, of course, inapplicable.  *Koontz*, 570 U.S. at 609.  However, it remanded to the

which provides that a government entity cannot condition a discretionary benefit on foregoing a constitutionally protected right.  *Id.*  Second, the majority held that the *Nollan/Dolan* standards applied to the "monetary exaction" imposed by the District.  *Id.* at 612–17.  Because the majority's reasoning on this issue is central to the case at hand, the Court briefly summarizes it here.

The majority began by expressing concern that land-use officials could "evade the limitations of *Nollan* and *Dolan*" by "giv[ing] the owner a choice of either surrendering an easement or making a payment equal to the easement's value."  *Id.* at 612.  It explained that these "in lieu of fees" are "functionally equivalent to other types of land use exactions."  *Id.*  Next the majority emphasized that the District sought to impose a "monetary obligation [that] burdened [Mr. Koontz's] ownership of a specific parcel of land."  *Id.* at 613.  It explained:

> Because of the direct link between the government's demand and a specific parcel of real property, this case implicates the central concern of *Nollan* and *Dolan*: the risk that the government may use its substantial power and discretion in land-use permitting to pursue governmental ends that lack an essential nexus and rough proportionality to the effects of the proposed new use of the specific property at issue, thereby diminishing without justification the value of the property.

*Id.* at 614 (footnote omitted).

The majority therefore accepted the "limited proposition that when the government commands the relinquishment of funds linked to a specific, identifiable property interest such as a bank account or parcel of real property, a '*per se* [takings] approach' is the

Florida Supreme Court to determine whether monetary damages might be available for this type of constitutional violation under state law.  *Id.*

proper mode of analysis under the Court's precedent." *Id.* (quoting *Brown*, 538 U.S. at 235).  Finally, the majority distinguished these "monetary exactions" from taxes and user fees, which "are not takings."  *Id.* at 615 (quotations omitted).  The Court's holding "does not affect the ability of governments to impose property taxes, user fees, and similar laws and regulations that may impose financial burdens on property owners."  *Id.*

4.   Post-*Koontz* Challenges to Relocation Assistance Ordinances

Since *Koontz*, two courts in the Ninth Circuit have considered challenges to local relocation assistance ordinances similar to the provision challenged by Plaintiffs.  In *Ballinger v. City of Oakland*, plaintiffs challenged an Oakland ordinance that required landlords to pay tenants between $6,500 (for studios and one-bedroom apartments) and $9,875 (for apartments with three or more bedrooms) for qualifying no-fault evictions. 398 F. Supp. 3d 560, 573–74 (N.D. Cal. 2019).  Judge Gilliam rejected plaintiffs' argument that the relocation fees were *per se* takings and held that legislation requiring the payment of money does not give rise to a physical taking.  *Id.* at 572–74.  Because plaintiffs declined to pursue a regulatory takings argument, the court dismissed plaintiffs' claims under the Just Compensation and Public Use Clauses.  *Id.* at 568–69, 572–74. Judge Gilliam also dismissed plaintiffs' *Nollan/Dolan* claim, explaining that generally applicable regulations are not subject to this exactions analysis.  *Id.* at 571–72.

In *Levin v. City & County of San Francisco*, Judge Breyer considered a similar San Francisco ordinance requiring relocation assistance payments for qualifying no-fault evictions.  71 F. Supp. 3d 1072 (N.D. Cal. 2014), *appeal dismissed and remanded*, 680 F. App'x 610 (9th Cir. 2017).  Unlike the uniform fee schedule in Oakland, San Francisco imposed a fee of twenty-four times the difference between the tenant's current monthly rate and the fair market value of a comparable unit in San Francisco.  *Id.* at 1077. Puzzlingly, this "difference" was not calculated based on actual market rates, but by

applying a single-variable multiplier—between 0.71 and 2.7155—to the tenant's rent-controlled rate based on how long the tenant had lived at the property. *Id.* Under this system, the plaintiffs in *Levin* owed their tenant $117,958.80 in relocation assistance. *See id.* After a bench trial, Judge Breyer enjoined enforcement of the ordinance, holding that although it served a valid public purpose, it was subject to and failed to satisfy *Nollan/Dolan*'s essential nexus and rough proportionality standards. *Id.* at 1080–90. Judge Breyer explained that the Ordinance "shares none of the features of rent control upheld by the courts" because it "retroactively requires [landlords] to pull from their pockets a huge lump-sum amount—in [this] case, roughly equivalent to a refund of two months of rent for every year the tenant occupied the property, starting long before [plaintiffs] purchased it." *Id.* at 1088.

## B.    AB 1482 and the Takings Clause of the U.S. Constitution

Plaintiffs' fifth cause of action asserts that the relocation assistance provision violates the Fifth Amendment to the U.S. Constitution as applied to the states by the Fourteenth Amendment. They present three constitutional theories: (1) the provision imposes an unconstitutional condition under *Koontz* and *Nollan/Dolan*, (2) it effects a purely private taking in violation of the Public Use Clause, and (3) it does not properly compensate property owners in violation of the Just Compensation Clause. (FAC ¶¶ 57–63.) The Court finds that all three theories fail as a matter of law.

### 1.    Unconstitutional Conditions and Exactions

Plaintiffs assert that the relocation assistance provision imposes an unconstitutional condition under *Nollan/Dolan* and *Koontz*. (FAC ¶¶ 60–63.) The Governor argues that, under binding Ninth Circuit precedent, generally applicable regulations are not subject to

*Nollan/Dolan* scrutiny.  The Court agrees and therefore concludes that Plaintiffs cannot bring a facial challenge to the relocation assistance provision under *Nollan* and *Dolan*.

In *McClung v. City of Sumner*, the Ninth Circuit considered a challenge to a city ordinance requiring all new developments to include storm drain pipes of a certain width. *See* 548 F.3d 1219, 1227 (9th Cir. 2008), *abrogated in part by Koontz*, 570 U.S. 595. The court found a *Penn Central* regulatory takings analysis was the appropriate test.  *Id.* It explained that the *Nollan/Dolan* standards only apply to "adjudicative, individual determinations" and not "general land use regulations."  *Id.*; *see also Garneau v. City of Seattle*, 147 F.3d 802, 811 (9th Cir. 1998) (holding that "*Dolan* applies only to as-applied takings challenges, not to facial takings challenges").  The basis for this distinction is that property owners can challenge legislation that they find burdensome or unfair through the political process, but have no similar recourse for adjudicative permitting decisions.  *See Ballinger*, 398 F. Supp. 3d at 572.  Plaintiffs argue that *Koontz* abrogated this rule, while the Governor argues that this part of *McClung* remains good law.

Three district courts in the Ninth Circuit have addressed exactly this issue, and two have agreed with the Governor's position.  *See Ballinger*, 398 F. Supp. 3d at 572; *Bldg. Indus. Ass'n-Bay Area v. City of Oakland*, 289 F. Supp. 3d 1056, 1058 (N.D. Cal. 2018), *aff'd* 775 Fed. App'x 348 (9th Cir. 2019); *but see Levin*, 71 F. Supp. 3d at 1079.  In an unpublished decision, the Ninth Circuit agreed that the *McClung* rule was not abrogated by *Koontz*.  *See Bldg. Indus. Ass'n Bay Area v. City of Oakland*, 775 Fed. App'x 348, 349–50 (9th Cir. 2019) (citing *McClung*, 548 F.3d at 1228 n.4)).  This Court finds these decisions persuasive.

First, *Koontz* itself involved an "adjudicative, individual determination," and the majority never addressed *Nollan/Dolan*'s application to general legislation.  Instead, it repeatedly emphasized "the special vulnerability of land use permit applicants to

-13-

extortionate demands for money."  *Koontz*, 570 U.S. at 619.  Similarly, in *Dolan* the Supreme Court highlighted that the "the city made an adjudicative decision to condition petitioner's application for a building permit on an individual parcel," instead of imposing an "essentially legislative determination [ ] classifying entire areas of the city." 512 U.S. at 385; *see also Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 546 (2005) ("Both *Nollan* and *Dolan* involved Fifth Amendment takings challenges to adjudicative land-use exactions.").  Moreover, *Dolan*'s "rough proportionality" requirement demands an "individualized determination" that the exacted public benefit "is related both in nature and extent to the impact of the proposed development."  512 U.S. at 391.  It would be difficult to apply this requirement to generally applicable regulations, which, by definition, do not involve individualized determinations.[3]

In *Levin*, Judge Breyer reached the opposite conclusion and held that *Koontz* abrogated *McClung*'s rule for legislative conditions.  71 F. Supp. 3d at 1083 n.4.  With the greatest respect, this Court disagrees.  As the dissenting Justices pointed out, the majority in *Koontz* declined to resolve this issue.  *See* 570 U.S. at 628 (Kagan, J., dissenting) ("The majority might, for example, approve the rule, adopted in several States, that *Nollan* and *Dolan* apply only to permitting fees that are imposed ad hoc, and not to fees that are generally applicable. . . . Maybe today's majority accepts that distinction; or then again, maybe not.").  Moreover, since Judge Breyer's decision in *Levin*, Justice Thomas—a member of the *Koontz* majority—agreed that this issue has not yet been resolved by the Supreme Court.  *See Cal. Bldg. Indus. Ass'n v. City of San Jose*, 136 S. Ct. 928, 928–29 (2016) (Thomas, J., concurring in denial of certiorari) (discussing post-*Koontz* division in the lower courts "over whether the *Nollan/Dolan* test applies in

---

[3] For similar reasons, courts across the country have agreed that *Koontz* did not disturb state and circuit court precedent limiting *Nollan/Dolan* to adjudicative actions.  *See, e.g.*, *2910 Georgia Ave. LLC v. District of Columbia*, 234 F. Supp. 3d 281, 305 (D.D.C. 2017); *Common Sense All. v. Growth Mgmt. Hearings Bd.*, at *7 (Wash. Ct. App. Aug. 10, 2015); *Dabbs v. Anne Arundel County*, 182 A.3d 798, 813 (Md. 2018), *cert. denied*, 2018 WL 3377873 (Oct. 1, 2018).

cases where the alleged taking arises from a legislatively imposed condition rather than an administrative one").[4]

"In sum, although it may be true that lower courts have divided over whether the *Nollan/Dolan* test applies in cases where the alleged taking arises from a legislatively imposed condition rather than an administrative one, the Ninth Circuit has provided the answer for this Court." *Ballinger*, 398 F. Supp. 3d at 572 (quotations omitted). It determined that *Nollan/Dolan* scrutiny only applies to "adjudicative, individual determinations" and not to "general land use regulations." *See McClung*, 548 F.3d at 1227; *see also Garneau*, 147 F.3d at 811. Under this rule, the appropriate test here is a *Penn Central* regulatory takings analysis, which Plaintiffs have declined to pursue. (*See* Compl. ¶¶ 57–59; Dkt. 20 [Opposition to Mot., hereinafter "Opp."] at 7–10.)

### 2.   The Public Use and Just Compensation Clauses

The Takings Clause forbids government entities from appropriating private property unless it is "for public use" and the government provides "just compensation." *See* U.S. Const. amend. V; *Brown*, 538 U.S. at 231–32. Plaintiffs allege that (1) the relocation assistance provision mandates purely private takings in violation of the Public Use Clause and (2) it "contains no provision for compensating or otherwise mitigating the impacts to [property owners] of the forced relocation payments" in violation of the Just Compensation Clause. (FAC ¶¶ 57–59.) The Governor argues that these claims fail because Plaintiffs have not properly alleged an underlying government taking of private property. The Court agrees.

---

[4] The Court also notes that the exorbitant fees at issue in *Levin* exerted a different kind of pressure on San Francisco property owners than the fees at issue here. *See Levin*, 71 F. Supp. 3d at 1077. A relocation fee of one month's rent has much more in common with standard rent control regulations than a fee of several years' rent. *See id.* at 1088.

Plaintiffs do not allege or argue that the relocation assistance payments are regulatory takings under *Penn Central*.  (*See* Compl. ¶¶ 57–59; Opp. at 7–10.)  Instead, they assert that the challenged provision mandates *per se* or physical takings and is therefore unconstitutional unless it satisfies the Just Compensation Clause and the Public Use Clause.  (*See* Compl. ¶¶ 57–59.)  This theory is not supported by precedent and fails as a matter of law.

The Court begins with the obvious point that the relocation assistance provision does not mandate "physical takings" of real or personal property.[5]  *See Tahoe-Sierra*, 535 U.S. at 322; *Ballinger*, 398 F. Supp. 3d at 572.  Nor does it appropriate or completely destroy the value of a lien on a specific piece of property.  *Cf. United States v. Security Indus. Bank*, 459 U.S. 70 (1982).  Instead, it requires a landlord to transfer a sum of money to his or her tenant.  Cal. Civ. Code § 1946.2(d)(1).  Although this obligation arises in the context of a lease for real property, it bears no resemblance to a classic possessory or physical taking that would trigger the Just Compensation Clause.  *See Tahoe-Sierra*, 535 U.S. at 322–24; *Yee*, 503 U.S. at 527 ("The government effects a physical taking only where it requires the landowner to submit to the physical occupation of his land.").  As the Supreme Court has previously explained, "statutes regulating the economic relations of landlords and tenants are not *per se* takings."  *FCC v. Fla. Power Corp.*, 480 U.S. 245, 252 (1987); *see also Yee*, 503 U.S. at 529–30.  Instead, because they regulate the use of property, rent control provisions and restrictions on terminating tenancies are examined under *Penn Central*'s regulatory takings test.  *See Yee*, 503 U.S. at 522–23, 528–30.

---

[5] In *Eastern Enterprises v. Apfel*, five Supreme Court Justices held that a general obligation to pay money is not a taking of personal property.  524 U.S. 498, 540 (1998) (Kennedy, J., concurring in judgment and dissenting in part); *id.* at 554 (Breyer, J., dissenting).

Plaintiffs argue that *Koontz* upended these well-settled principles.  Specifically, they contend that *Koontz* expanded the definition of *per se* takings to include all government-imposed financial obligations "linked to a specific, identifiable piece of property."  (Opp. at 9 [quoting *Koontz*, 570 U.S. at 614].)  According to Plaintiffs, these monetary obligations are now *per se* takings and therefore unconstitutional unless the government provides "just compensation."  (*See id.*)  The Court disagrees.  *See Ballinger*, 398 F. Supp. 3d at 573–74 (rejecting this argument).

The actual holding in *Koontz* was far narrower.  The Supreme Court held that, under certain circumstances, a "monetary exaction" that burdens a specific parcel of land must satisfy *Nollan/Dolan*'s nexus and rough proportionality requirements.  *Koontz*, 750 U.S. at 612–14.  The majority repeatedly emphasized that the purpose of its holding was to ensure that permitting officials could not evade *Nollan/Dolan* scrutiny and the unconstitutional conditions doctrine.  *See id.*  The Court did *not* hold that these exactions were separately subject to review under the Just Compensation Clause.  *See id.*  Nor did it expand the definition of *per se* takings outside the *Nollan/Dolan* context.  *See id.*

This is the only logical reading of *Koontz*.  The Just Compensation Clause— untethered from *Nollan* and *Dolan*—does not offer a coherent framework for assessing government-imposed monetary obligations.  *See Ballinger*, 398 F. Supp. 3d at 574 ("[I]t is difficult to envision how exactly the City of Oakland would pay just compensation for an ordinance requiring the payment of money between two private parties.").  Moreover, in *Koontz*, like the case at hand, nothing had been taken to trigger the government's Just Compensation Clause obligations.  *See* 750 U.S. at 606–12.

Plaintiffs have not alleged a *per se* or possessory takings and have declined to pursue a regulatory takings argument.  Accordingly, they have not identified a taking of

private property that would trigger the Public Use Clause and Just Compensation Clause.[6] These claims therefore fail as a matter of law.

## C.    AB 1482 and the Takings Clause of the California Constitution

In their sixth cause of action, Plaintiffs allege that the relocation assistance provision violates the "public use" requirement of the Takings Clause of the California Constitution.  (*See* Compl. ¶¶ 64–67 [citing Cal. Const. art. I, § 19].)  The Governor argues that this claim fails alongside Plaintiffs' claims under the Takings Clause of the U.S. Constitution.  The Court agrees.

The California Constitution provides: "[p]rivate property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner."  Cal. Const. art. I, § 19.  Other than protecting "damaged" as well as "taken" property—a distinction not relevant here—the the California Takings Clause is interpreted identically to its federal counterpart.  *See San Remo Hotel L.P. v. City and County of San Francisco*, 27 Cal. 4th 643, 664 (2002).[7]

The California Supreme Court's interpretation of the Takings Clause is consistent with the analysis above.  Like this Court, it held that *Koontz* did not dramatically expand

---

[6] Plaintiffs have likely failed to state a claim under the Public Use Clause for other reasons.  "[A] taking should be upheld as consistent with the Public Use Clause as long as it is rationally related to a conceivable public purpose. This deferential standard of review echoes the rational-basis test used to review economic regulation under the Due Process and Equal Protection Clauses."  *MHC Fin. Ltd.*, 714 F.3d at 1129 (quotations omitted).  As discussed below, Plaintiffs' Due Process Clause claim fails as a matter of law because they have not plausibly alleged that it fails to rationally advance a legitimate government interest.  The same standard would apply to Plaintiffs' Public Use Clause claim.  *See id.*

[7] In one case, the California Supreme Court specifically considered challenges to rent control ordinances under the U.S. and California Takings Clause without distinguishing between the two.  *See Santa Monica Beach, Ltd. v. Superior Court*, 19 Cal. 4th 952, 957, 962–75 (1999).  It held that "prevent[ing] excessive and unreasonable rent increases caused by the growing shortage of and increasing demand for housing" is a legitimate government interest.  *Id.* at 969 (quoting *Pennell*, 485 U.S. at 12).

the definition of *per se* takings to include monetary obligations linked to real property. *See Cal. Bldg. Indus. Ass'n v. City of San Jose*, 61 Cal. 4th 435, 460–62, n.11 (2015). Indeed, the California Supreme Court reads *Koontz* quite narrowly, limiting its application to situations where the government seeks a possessory interest in a specific parcel of real property.  *Id.*  Accordingly, this claim fails for the reasons set out above.

### D.    AB 1482 and the Fourth Amendment to the U.S. Constitution

Plaintiffs' seventh cause of action alleges that the relocation assistance provision mandates the unreasonable seizure of private property in violation of the Fourth Amendment of the U.S. Constitution.  (Compl. ¶¶ 68–71.)  The Governor argues that Plaintiffs fail to state a claim because they have not alleged a cognizable government action.  The Court agrees.

Under the Fourth Amendment, a seizure "occurs when there is some meaningful interference with an individual's possessory interests in that property."  *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (internal quotation omitted).  The Fourth Amendment's protections apply in both the civil and criminal context, but only constrain "state action." *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 51 (1993); *Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982).  To state a claim for an unconstitutional seizure, "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (internal quotations omitted).

The only state action here is the Governor's signature on AB 1482.  But passing or signing a bill that may lead to the transfer of private property between private parties does not gives rise to a Fourth Amendment Claim.  *See id.*; *Ballinger*, 398 F. Supp. 3d at 575.  "[T]his kind of subtle encouragement is no more significant than that which inheres

in the State's creation or modification of any legal remedy." *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 53.  Finding it to be a state action would destroy the "essential dichotomy between public and private acts." *Id.* (quotation omitted).  Because Plaintiffs have not alleged a seizure by a state actor, their Fourth Amendment claim fails as a matter of law.

### E.    AB 1482 and the Due Process Clause of the U.S. Constitution

In their eighth cause of action, Plaintiffs allege that the relocation assistance provision violates the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution because it applies retroactively and does not substantially advance a legitimate state interest.  (Compl. ¶¶ 73–76.)  The Governor argues that the provision does not operate retroactively and, in any event, survives the applicable rational basis review.  The Court agrees and finds that Plaintiffs' substantive due process claim fails as a matter of law.

The Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  Because Plaintiffs do not allege that the relocation assistance provision implicates a "fundamental right" or utilizes a suspect classification, the provision need only meet "meet the (unexacting) standard of rationally advancing some legitimate governmental purpose." *See Richardson v. City & County of Honolulu*, 124 F.3d 1150, 1162 (9th Cir. 1997); *see also Reno v. Flores*, 507 U.S. 292, 302 (1993).  A regulation fails this test if it is arbitrary and irrational.  *See Richardson*, 124 F.3d at 1162.  Plaintiffs bear the "extremely high" burden of establishing that the provision fails to rationally advance a legitimate government interest.  *See Richardson*, 124 F.3d at 1162.  Because "retroactive" statutes are generally disfavored, they may run afoul of this standard.  *See Eastern Enterprises*, 524 U.S. at 548 (Kennedy, J., concurring).

As an initial matter, the Court is not convinced that the challenged provision is retroactive.  A law is retroactive if it "attaches new legal consequences to events completed before its enactment."  *Landgraf v. USI Film Prod.*, 511 U.S. 244, 270 (1994).  The legal consequences at issue here—relocation payments—are only triggered by terminations of tenancies that occur *after* AB 1482 became operative.  *See* Cal. Civ. Code § 1946.2(d)(1).  Tenancies terminated before then are not affected.  *See id.*  To be sure, the provision applies to preexisting leases and landlord-tenant relationships, but "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law."  *See Landgraf*, 511 U.S. at 269–70 (citations omitted).

In any event, the Court finds that, as a matter of law, the provision advances a legitimate public purpose: promoting housing stability during a statewide housing crisis.  *See* Cal. Civ. Code § 1947.12(k)(1).  In other words, it helps people stay on their feet when they are evicted without fault.  This is a legitimate public purpose.  *See Pennell*, 485 U.S. at 13–14 (upholding rent control ordinance challenged on substantive due process grounds); *Levald*, 998 F.2d at 690 (same); *Apartment Ass'n of Greater L.A. v. City of Beverly Hills*, 2019 WL 1930136, at *7 (C.D. Cal. Apr. 17, 2019) (dismissing substantive due process challenge to relocation payment ordinance); *Ballinger*, 398 F. Supp. 3d at 576 (same).

Plaintiffs have not plausibly alleged that the relocation assistance provision is irrational or arbitrary.  The California legislature could have reasonably concluded that it would help alleviate the costs of losing one's home—e.g. storage, moving, temporary housing, rental application fees, realtor fees, and security deposits—and, therefore, help displaced individuals avoid financial crises.  *See Levin*, 71 F. Supp. 3d at 1080; *Ballinger*, 398 F. Supp. 3d at 576; *Apartment Ass'n of Greater L.A.*, 2019 WL 1930136, at *7.

Simply put, Plaintiffs have not stated a claim under the Due Process Clause because, as a matter of law, the relocation assistance provision is not retroactive, arbitrary, or irrational.

### F.   Leave to Amend

Although a district court should grant a plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations, *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995), it need not grant leave to amend if amendment of the complaint would be futile, *see Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008). Plaintiffs request leave to amend should the Governor's motion be granted, but the Court sees no reason to grant leave here.  This action involves a facial challenge to a state statute, and the Court resolves the Governor's motion on pure issues of law.  Because additional factual allegations would not change the Court's analysis, granting leave to amend would be futile. Accordingly, Plaintiffs' claims against the Governor are **DISMISSED WITH PREJUDICE**.

## V.  CONCLUSION

For the foregoing reasons, the Governor's motion to dismiss is **GRANTED**, and Plaintiffs' claims against the Governor are **DISMISSED WITH PREJUDICE**.  Because the Governor is the sole remaining Defendant, this action is **DISMISSED WITH PREJUDICE.**

DATED:     March 11, 2020

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

-22-